838 So.2d 784 (2002)
STATE of Louisiana
v.
Roosevelt CANADA, Jr.
No. 2001 KA 2674.
Court of Appeal of Louisiana, First Circuit.
May 10, 2002.
*785 Doug Moreau, D.A., By Aaron Brooks, Asst. D.A., Baton Rouge, Counsel for Appellee State of Louisiana.
Frederick Kroenke, Baton Rouge, Counsel for Defendant/Appellant Roosevelt Canada, Jr.
Before: FITZSIMMONS, DOWNING, and LANIER[1], JJ.
WALTER I. LANIER, Jr., Judge Pro Tem.
The defendant, Roosevelt Canada, Jr., was charged by bill of information with four offenses: (1) simple criminal damage to property of a value greater than $500 and less than $50,000, in violation of La. R.S. 14:56; (2) armed robbery, in violation of La. R.S. 14:64; (3) attempted carjacking, in violation of La. R.S. 14:27 and 14:64.2; and (4) carjacking, in violation of La. R.S. 14:64.2. He entered into a plea agreement with the State and trial court, and pled guilty to one count of carjacking with the understanding that he would receive a sentence in the range of 3 to 40 years and the other three charges against him would be dismissed. (The sentencing range for carjacking under La. R.S. 14:64.2 is actually 2 to 20 years.) He was sentenced to 15 years imprisonment at hard labor. He filed a motion for reconsideration of the sentence that was denied.
This appeal followed. Appellant's only assignment of error is that the sentence imposed is unconstitutionally excessive.

FACTS
At the May 8, 2001 Boykin hearing, the trial court judge asked the assistant district attorney to state the factual basis for the defendant's plea. The record reflects the following:
THE COURT: A FACTUAL BASIS FOR THE PLEA?
MR. BROOKS: YOUR HONOR, THIS INDIVIDUAL WALKED INTO JEFF'S FOOD MARKET AT APPROXIMATELY SEVEN O'CLOCK ON THE DATE OF JUNE 17TH. HE *786 PLACED SOME COLD DRINKS AND CIGARETTES ON THE COUNTER AND WAS ASKED TO PAY FOR THE CIGARETTES AND COLD DRINKS. HE DECIDED HE WASNT. HE PULLED OUT A CRESCENT WRENCH AND THREATENED THE OWNER OF JEFF'S FOOD MARKET AND SAID, "GO AHEAD AND CALL THE POLICE," AND RAISED THE WRENCH AS IF TO HIT THEM. HE THEN WALKED OUT AND PROCEEDED TO BREAK WINDOWS ON CAR DOORS IN AN ATTEMPT TO GET THEM. WHEN HE COULD NOT GET THOSE TWO CARS TO OPERATE HE THEN CAME INTO CONTACT WITH ANDREE LEFEVERE, WHO IS PRESENT IN THE COURT ROOM AND WISHES TO MAKE A VICTIM STATEMENT AT THIS INDIVIDUAL'S SENTENCING AT A FUTURE DATE,UHWHEREUPON HE THREATENED HER AND FORCEFULLY TOOK HER CAR FROM HER WITHOUT HER PERMISSION.
BY THE COURT:
Q. SIR, DO YOU UNDERSTAND THE FACTS THAT HAVE BEEN READ INTO THE RECORD BY THE STATE OF LOUISIANA?
A. YES, SIR.
Q. ARE THOSE THE FACTS THAT YOU DESIRE TO PLEAD GUILTY TO TODAY?
A. YES, SIR.

VALIDITY OF THE PLEA BARGAIN
In his only assignment of error, the defendant asserts the sentence imposed pursuant to the plea agreement "is unconstitutionally excessive." He contends he is 35 years old, his prior arrest record occurred when he was 20 years old, he took responsibility for his conduct by pleading guilty and his conduct "did not involve the use of great force, or violence, though the victims were frightened." He asserts a "trial court cannot allow its dislike for the emotional trauma of the crime to influence its sentencing" and the trial court failed to properly consider the appropriate factors.

The Nature of a Plea Agreement
A discussion of the legal relations between the State, the defendant and a court in a plea agreement is necessary to properly decide this case.
In State v. Lewis, 539 So.2d 1199, 1204 (La.1989), appears the following:
We relied on contract principles to reach a decision in Nall, reasoning that a plea bargain is a contract between the state and one accused of a crime. Nall, 379 So.2d at 733. Such an approach has been looked upon with approval in the federal jurisprudence, especially where a promise of immunity from prosecution is at issue. See e.g., Rowe v. Griffin, 676 F.2d 524, 528 (11th Cir.1982). Although the code provisions we interpreted in Nall have been revised, their substance remains unchanged. Compare former La. C.C. arts. 1779, 1819, 1823-24 with current La. C.C. arts. 1927, 1948-50. Thus, the principles enuciated in that decision remain viable.
A long-standing rule of contract law is that consent of both parties is required for a valid contract. La. C.C. art. 1927. Consent may be vitiated by error, fraud, or duress. La. C.C. art. 1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. La. C.C. art. 1949. Finally, the Civil Code provides:
Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object *787 ..., or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation. La. C.C. art. 1950.
In State v. Louis, 94-0761 (La.11/30/94), 645 So.2d 1144, 1148 and 1149 appears the following:

In determining the validity of agreements not to prosecute or of plea agreements, the courts generally refer to rules of contract law. State v. Nall, 379 So.2d 731 (La.1980); State v. Lewis, 539 So.2d 1199 (La.1989). Contractual principles may be helpful by analogy in deciding disputes involving plea agreements. Ricketts v. Adamson, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987); Cf. Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). However, the criminal defendant's constitutional right to fairness may be broader than his or her rights under contract laws. State v. Nall, 379 So.2d at 734 (Dennis, J., concurring). Moreover, commercial contract law can do no more than to serve as an analogy or point of departure, since "plea agreements are constitutional contracts." Ricketts v. Adamson, 483 U.S. at 16, 107 S.Ct. at 2689. The Court further stated in Ricketts:

The values that underlie commercial contract law, and that govern the relations between economic actors, are not coextensive with those that underlie the due Process Clause, and that govern relations between criminal defendants and the State. Unlike some commercial contracts, plea agreements must be construed in light of the rights and obligations created by the Constitution. 483 U.S. at 16, 107 S.Ct. at 2689.

. . .

In the present case, we refer first to the law of contracts for application by analogy in determining whether a contract was formed. A contract is formed by the consent of the parties established through offer and acceptance. La. Civ. Code art. 1927. The offer and acceptance may be verbal unless the law prescribes a requirement of writing. Id.; Laroussini v. Werlein, 52 La.Ann. 424, 27 So. 89 (1900). Once there is an offer and acceptance, the agreement is subject to specific performance. La. Civ. Code art. 1986. The party demanding performance of a contract has the burden of proving its existence. Phillips v. Insilco Sports Network, Inc., 429 So.2d 447 (La.App. 4 Cir.1983). Moreover, the obligation may be dependent upon an uncertain event. La. Civ.Code art. 1767. A lawful cause is also necessary to the existence of a contract. La. Civ. Code art. 1966. The cause is the reason why a party obligates himself. La. Civ. Code art. 1967. (Emphasis added)
In Lewis v. State, Department of Public Safety and Corrections, 602 So.2d 68, 74 (La.App. 1 Cir.), writ denied, 604 So.2d 1312 (La.1992), appears the following:
The charge of theft in violation of La. R.S. 14:67 brought against Lewis in the bill of information is clearly a criminal matter. As a criminal matter, it is controlled by the substantive criminal law and the Louisiana Code of Criminal Procedure. Pleas in criminal matters are provided for in La.C.Cr.P. arts. 551-561. A plea of guilty is one of the four kinds of pleas authorized by La. C.Cr.P. art. 552. Plea bargaining is defined in Black's Law Dictionary p. 1037 (5th ed.1979) as follows:
Plea agreement. See Plea bargaining. Plea bargaining. The process whereby the accused and the prosecutor in *788 a criminal case work out a mutually satisfactory disposition of the case subject to court approval. It usually involves the defendant's pleading guilty to a lesser offense or to only one or some of the counts of a multi-count indictment in return for a lighter sentence than that possible for the graver charge. Plea bargaining procedures in the federal courts are governed by Fed.R.Crim.P. 11(e). (Emphasis added)

Under the substantive criminal law, there are only two alternative remedies available for a breach of a plea bargain: (1) specific performance of the agreement, or (2) nullification or withdrawal of the plea. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); State v. Chalaire, 375 So.2d 107 (La.1979); State v. Wade, 364 So.2d 575 (La.1978); State v. Greer, 572 So.2d 1166 (La.App. 1 Cir.1990). At the time Lewis sought specific performance of his state plea bargain in state court, he had already served his state sentence, and the State had no authority to compel the federal authorities to give him credit for his state time on his federal sentence. In this procedural posture, the State could not give specific performance and the question of granting that remedy was moot. Lewis has never asked for the remedy of nullification or withdrawal of the guilty plea (with the attendant reinstatement of the parties in their pre-plea positions ). (Emphasis added)
A criminal plea agreement is analogous to a civil compromise. La. C.C. art. 3071 et seq.

The Plea Agreement
The transcript of the Boykin hearing shows the following about the plea agreement herein:
Q. IT IS MY UNDERSTANDING THAT YOU ARE GOING TO BE PLEADING GUILTY TODAY BECAUSE OF DISCUSSIONS BETWEEN YOURSELF, AND YOUR ATTORNEY, AND THE STATE OF LOUISIANA, IS THAT CORRECT?
A. YES, SIR.
Q. AND WHAT ARE THE TERMS AND CONDITIONS OF THE PLEA?
MR. BROOKS: YOUR HONOR, HE IS GOING TO PLEAD GUILTY AS CHARGED TO CARJACKING. HE WILL HAVE A SENTENCING RANGE OF BETWEEN THREE AND FORTY YEARS. THE FURTHER CONDITION IS THAT HE NOT HAVE ANY CONTACT WITH HIS STALKING VICTIM EVER OR THAT WILL BECOME A VIOLATION OF THIS PLEA AGREEMENT.
MR. SIMMONS: AND ALL OF THE REST OF THE CHARGES ARE GOING TO BE DROPPED?
MR. BROOKS: CORRECT.
MR. SIMMONS: THERE ARE THREE OTHER FILES, YOUR HONOR.
Q. IS THAT YOUR UNDERSTANDING MR. CANADA?
A. YES, SIR.
Q. BEFORE I CAN MOVE FORWARD I MUST EXPLAIN CERTAIN RIGHTS THAT ARE GRANTED TO YOU BY THE CONSTITUTION OF THIS STATE AND THE UNITED STATES. YOU HAVE THE RIGHT TO BE REPRESENTED BY AN ATTORNEY AT EVERY STAGE OF THE PROCEEDINGS AGAINST YOU. IN FACT, YOU ARE REPRESENTED BY COUNSEL AND COUNSEL IS IN OPEN COURT WITH YOU AT *789 YOUR SIDE TODAY, IS THAT CORRECT?
A. YES, SIR.
Q. OKAY. DO YOU UNDERSTAND THE POSSIBLE PENALTIES THAT ARE PROVIDED FOR BY STATUTE? THAT IS THREE TO FORTY YEARS ACCORDING TO THE PLEA AGREEMENT THAT HAS BEEN REACHED, DO YOU UNDERSTAND?

A. YES, SIR.

Q. DO YOU ANY [sic] QUESTIONS REGARDING THE PENALTIES?
A. NO, SIR.
Q. HOW DO YOU PLEAD TO ONE COUNT OF CARJACKING?
A. GUILTY.
. . .
Q. BY PLEADING GUILTY YOU ARE ALSO WAIVING YOUR RIGHT TO ANY APPEAL OF ANY CONVICTION THAT MAY RESULT AT YOUR TRIAL. DO YOU UNDERSTAND THAT YOU ARE WAIVING YOUR RIGHT TO AN APPEAL?

A. YES, SIR.

. . .
Q. DO YOU HAVE ANY QUESTIONS FOR ME REGARDING THE CHARGES OF WHICH YOU ARE PLEADING GUILTY TO?
A. NO, SIR.
Q. DO YOU HAVE ANY QUESTIONS FOR ME AS TO THE PENALTIES THAT YOU ARE EXPOSED TO?

A. NO, SIR.

Q. DO YOU HAVE ANY QUESTIONS FOR ME REGARDING THE CONSTITUTIONAL RIGHTS THAT YOU ARE WAIVING HERE TODAY BY PLEADING GUILTY?

A. NO, SIR.

Q. YOU HAVE THE RIGHT TO ASK ME ANY QUESTIONS YOU HAVE IN REGARDS TO THE CONSTITUTIONAL RIGHTS, SIR?
A. NO, SIR.
Q. YOU TOTALLY UNDERSTAND THEM?
A. YES, SIR.
Q. AND YOU ARE WAIVING THE RIGHTS THAT I HAVE EXPLAINED TO YOU?

A. YES, SIR. (Emphasis added)
Prior to the plea agreement, the defendant was charged with four offenses: (1) armed robbery in violation of La. R.S. 14:64 with a sentencing exposure of not less than 10 nor more than 99 years of confinement at hard labor without benefit of probation, parole or suspension of sentence; (2) carjacking in violation of La. R.S. 14:64.2 with a sentencing exposure of not less than 2 nor more than 20 years of confinement at hard labor without benefit of probation, parole or suspension of sentence; (3) attempted carjacking in violation of La. R.S. 14:27 and 14:64.2 with a sentencing exposure of not less than 1 nor more than 10 years confinement at hard labor without benefit of probation, parole or suspension of sentence; and (4) simple criminal damage to property in an amount greater than $500 but less than $50,000 with a sentencing exposure of not more than 2 years with or without hard labor, or a fine of not more than $1,000, or both. Thus, his maximum sentencing exposure was 131 years, of which 129 years was mandatory with hard labor and without benefit of probation, parole or suspension of sentence. Further, his minimum sentencing exposure was 13 years at hard labor without benefit of probation, parole or suspension of sentence. The sentence *790 actually imposed was only 2 years greater than his minimum sentencing exposure prior to the plea agreement. This plea agreement had substantial benefits for the defendant.
La. C.C. art. 1983 provides as follows:
Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith.
The record reflects that the parties to the plea agreement performed their obligations in good faith. The defendant pled guilty to one count of carjacking; the state dismissed the three other charges against the defendant; and the trial judge imposed a sentence within the range agreed upon by the parties (and within the legal sentencing range for carjacking).
This court was not a party to the plea agreement. Nevertheless, the defendant is asking this court to modify the plea agreement by amending the sentence imposed by the trial court pursuant to the agreement. As previously indicated, the jurisprudence considers a plea agreement as analogous to a contract that "is formed by the consent of the parties established through offer and acceptance." Thus, it must logically follow any amendment or change to the agreement also must require the mutual consent to the change or amendment; without mutual consent to the change or amendment, the parties are not bound by it. Accordingly, it is arguable, under general contract law, that if this court, as a juridical person not a party to the plea agreement, orders a change (uses duress) in the agreement, then a party to the agreement whose consent has been vitiated by the change can withdraw from and/or rescind the original agreement. In this posture, the State could refuse to agree to the amendment or change and reinstate the three charges against the defendant that were dismissed as part of the original agreement.

THE SENTENCE
The trial court sentenced the defendant to "15 YEARS AT HARD LABOR IN THE CUSTODY OF THE DEPARTMENT OF CORRECTIONS, CREDIT FOR TIME SERVED." See La. R.S. 15:301.1 A.
As previously indicated, at the Boykin hearing, the assistant district attorney stated that the agreed upon sentencing range was between 3 and 40 years. (This is the sentencing range for first degree robbery. La. R.S. 14:64.1 B.) Pursuant to La. R.S. 14:64.2 B, the authorized sentence for carjacking is imprisonment "at hard labor for not less than two years and for not more than twenty years, without benefit of parole, probation, or suspension of sentence." This statement was made in the presence of the trial court judge, the defense counsel and the defendant. There was no timely objection to this statement by any party.
The State and the defendant in their appellate briefs acknowledge that the correct sentencing range for carjacking is 2 to 20 years. At page 2 of his brief, the defendant states that "[t]he defendant changed his plea to guilty of carjacking, with the understanding that he would receive a sentence in the range of 3-40 years." The defendant has not assigned error to the statement of the sentencing range given at the Boykin hearing. Accordingly, this error is not considered pertinent to this appeal. La.C.Cr.P. art. 841; Uniform RulesCourts of Appeal, Rule 2-12.4. See also La. C.C. arts. 5, 1950 and 3078.
Finally, a plea of guilty waives all non-jurisdictional defects in the proceedings prior to the plea. State v. Crosby, 338 *791 So.2d 584 (La.1976). In the instant case, the erroneous statements about the sentencing range for carjacking were made prior to the guilty plea and were not reserved for review on appeal.

Right to Contest the Sentence Imposed Pursuant to the Plea Agreement
La.C.Cr.P. art. 881.2 A(2) provides as follows:
The defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea.
In State v. Young, 96-0195 (La.10/15/96), 680 So.2d 1171, 1174, appears the following:
The Legislature passed La.C.Cr.P. art. 881.2(A)(2) in 1991 (after State v. Smack, 425 So.2d 737 (La.1983)) to help implement the Louisiana Sentencing Guidelines. Although the Guidelines have been repealed, they still provide evidence of the legislative intent behind the passage of La.C.Cr.P. art. 881.2(A)(2). La. S.G. § 301(A) and (B) anticipated a plea agreement in which the defendant could plead guilty in exchange for imposition of a sentence within a grid cell or for a specific sentence. Comment (3) to La. S.G. § 301 explained "[t]he defendant cannot appeal from a sentence imposed in conformity with a plea agreement set forth in the record. See LSA-C.Cr.P. art. 881.2(A)(2)." This comment shows the legislature clearly intended for 881.2(A)(2) to preclude review of all plea bargains that are set forth in the record. Further support of this legislative intent is found in the Introduction to the Louisiana Sentencing Guidelines Manual, 1994 Edition at p. 11 which states:

[N]o further justification is required under the Guidelines if a guilty plea agreement is reached by the parties and submitted to the court with a recommendation regarding a particular sentence or a range or "cap." The Guidelines and the 1991 implementing legislation adopt the view that a sentence in a particular case, which is acceptable to the prosecutor, defense counsel, and the trial court, should not be subjected to scrutiny by a reviewing court.

Based upon the evidence presented above, it is clear the legislature intended La.C.Cr.P. art. 881.2(A)(2) to apply to plea agreements involving both specific sentences and sentencing caps. (Emphasis added; footnote omitted)
The standard rules for interpreting laws are found in La. C.C. art. 9 et seq. and La. R.S. 1:1 et seq. See also Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1 Cir.1984). Article 881.2 A(2) is clear and unambiguous. La. C.C. art. 9; La. R.S. 1:4.

The Instant Case
The facts show that the sentence imposed herein was in conformity with the plea agreement that was set forth in the record at the time of the plea. The defendant is precluded from appellate review of the sentence. State v. Smith, 99-0946 (La. App. 1 Cir. 2/18/2000), 755 So.2d 351; State v. Sorenson, 98-0520 (La.App. 1 Cir. 12/28/98), 725 So.2d 604; State v. Lewis, 633 So.2d 315 (La.App. 1 Cir.1993). If the defendant wanted to appeal the sentence, he should have reserved the right to do so as part of the plea agreement as was done in State v. Shipp, 98-2670, p. 7 (La.App. 1 Cir. 9/24/99), 754 So.2d 1068, 1072.

Conclusion
The assignment of error is not considered pursuant to the authority of La. C.Cr.P. art. 881.2 A(2).

*792 DECREE
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
FITZSIMMONS, J., concur.
NOTES
[1] The Hon. Walter I. Lanier, Jr., Judge (retired), First Circuit Court of Appeals, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.